| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

------------------------------------------------------------ X

YOSSEF BONIEL AND SHELLY BONIEL,

                 Plaintiffs,

          - against -

U.S. BANK N.A., as trustee for LEHMAN MORTGAGE TRUST PASS THROUGH CERTIFICATES, SERIES 2006-8; NATIONSTAR MORTGAGE, LLC,

                 Defendants.

**MEMORANDUM & ORDER**

1:12-CV-3809 (ERK)(MDG)

------------------------------------------------------------ X

KORMAN, *J*.:

      Plaintiffs Yossef and Shelly Boniel filed suit in the Supreme Court of New York, Queens County, alleging negligent misrepresentation, fraudulent misrepresentation, invalid assignment, unjust enrichment, violation of Regulation Z of the Truth in Lending Act and are seeking to quiet title on their property. The claims stem from the allegedly improper transfer of mortgages on plaintiffs' property at 72 Tennis Place, Forest Hills, New York. On August 1, 2012, the defendants removed the action. The parties filed cross-motions for summary judgment. While the defendants filed a statement of undisputed material facts, the plaintiffs have failed to respond. The result is that the defendants' statement of undisputed material facts is "deemed to be admitted." Local Rule 56.1(c).

## FACTS

      Plaintiffs obtained a mortgage from Lehman Brothers Bank, FSB ("Lehman FSB") on September 29, 2006 in the amount of $2,250,000 secured by their property at 72 Tennis Place in Forest Hills, Queens. Def.'s Statement of Undisputed Material Facts ("Def. SUMF") ¶ 1; Loll Decl. Ex. 2. The mortgage served to consolidate two prior mortgages on the subject property,

1

one from North Fork Bank in the amount of $590,000 and one from Webster Bank N.A. in the amount of $850,000. Def. SUMF ¶ 2; Loll Decl. Ex. 3 at 5. The remaining funds after the prior mortgages were paid off were distributed to plaintiffs in cash in the amount of $639,776.70. *Id.* The new mortgage with Lehman FSB was denominated a "Consolidation, Extension, and Modification Agreement" ("CEMA"). Def. SUMF ¶ 6; Compl. Ex. E; Loll Decl. Ex. 3. The beneficial ownership of the plaintiffs' loan was transferred to the Lehman Mortgage Trust[1] on November 28, 2006. Def. SUMF ¶ 3. The mortgage is currently serviced by Nationstar Mortgage LLC, on behalf of the trust. Def. SUMF ¶ 5.

The transaction which consolidated the outstanding mortgages into a single mortgage and note involved the transfer of the Webster Bank note. The transfer document was signed by Adele DiNuzzo on behalf of Webster Bank. Def. SUMF ¶ 7; DiNuzzo Decl. Ex. A; Compl. Ex. C. The CEMA itself was executed by Krista L. Gingrich on behalf of Mortgage Electronic Registration Systems, Inc. ("MERS") which, in turn, was acting as the nominee of Lehman FSB. Def. SUMF ¶ 9; Loll Decl. Ex. 3, at 3; Compl. Ex. E. Defendants submitted a declaration from DiNuzzo attesting to the validity of her signature and her authority to sign for Webster Bank, as well as the declaration of Nitin Mhatre attesting to her position and authority. DiNuzzo Decl.; Mhatre Decl. They also submitted a MERS corporate resolution which authorizes Ms. Gingrich to execute documents on behalf of MERS. Def. SUMF ¶ 11; Loll Decl. Ex. 7.

Plaintiffs, for their part, argue that DiNuzzo's signature was not valid because she was a "robosigner" and not authorized to sign on behalf of Webster Bank. Compl. ¶ 11–12. They further argue that Ms. Gingrich had no authority to sign for MERS because she in fact worked for Aurora Loan Services. Compl. ¶ 13. The complaint also disputes the validity of the assignment to the Lehman Trust and U.S. Bank's authority to collect as trustee.

---

[1] The full name of the Lehman Mortgage Trust is "Lehman Mortgage Trust Mortgage Pass Through Certificates, Series 2006-8." Defendant U.S. Bank, N.A. serves at its Trustee.

# ANALYSIS

## I.	Standing

While I agree that plaintiffs have standing the issue does not require extended discussion because I also conclude that the defendants are entitled to summary judgment. Plaintiffs have made payments to defendants on the mortgage. If plaintiffs prevail, they would be entitled to the return of the monies paid to defendants under the false pretense that defendants were entitled to that money. Thus, they have sufficiently alleged injury-in-fact to support standing.

## II.	Plaintiffs' First Five Causes of Action.

Plaintiffs' first cause of action, though lacking a title, appears to be for fraudulent misrepresentation. A common law claim of fraudulent misrepresentation requires the plaintiff prove that the defendant made a misrepresentation of a material fact with knowledge of its falsity and with the intent to induce detrimental reliance on the part of the plaintiff. *See Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir. 1987). Claims of fraud must be pled with particularity, under both New York and Federal rules of procedure. *See* Fed. R. Civ. P. 9(b); N.Y. C.P.L.R. 3016(b).

Plaintiffs' second cause of action is for negligent misrepresentation. To prevail on a claim of negligent misrepresentation under New York law a plaintiff must show that (1) the defendant owed the plaintiff a duty of care due to a special relationship; (2) the defendant knew or should have known that their representations were false; (3) the defendant knew or should have known that the plaintiff would rely on the misrepresentations; and (4) the plaintiff in fact relied on those misrepresentations to their detriment. *See Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

The complaint alleges that the defendants either misrepresented the fact that there was a valid consolidation of their prior mortgages and that later assignments were valid, with

knowledge of the falsity of those representations, or that they failed to use reasonable care to discover and convey information about the validity of the consolidation or assignments and that they had a duty to "impart correct information.". *See* Compl. ¶¶ 20–30. Consequently, by purposefully or negligently failing to impart such information, defendants induced the plaintiffs to pay their monthly mortgage payments to an entity not entitled to collect. *Id.* at ¶¶ 24, 30.

Plaintiffs' claims fail primarily because they cannot identify any false statement or misrepresentation that defendants made to them. Though plaintiffs allege in the complaint and argue in their papers that the various loan documents were invalid and that the signatories were unauthorized to sign or signed improperly, they have adduced no evidence to that effect and done nothing to rebut defendants' plentiful evidence showing the mortgage and the assignments were valid. Defendants have provided the signed original CEMA as well as the signed and executed assignments and declarations from relevant persons with personal knowledge attesting to the validity of the signatures and the authority of the signatories to sign on behalf of their respective organizations. *See* Loll Decl. Ex. 2, 3, 7; DiNuzzo Decl.; Mhatre Decl.

Plaintiffs make several arguments to the contrary, none of which give rise to a genuine issue of material fact or illustrates why summary judgment in their favor would be proper. First, they argue that Adele DiNuzzo was not an authorized signatory for Webster Bank and was, in fact, a "robosigner." Pl. Brief at 7, 12. This is flatly contradicted by the declaration of DiNuzzo's, who has first-hand knowledge of her position and signature, and the declaration of Nitin Mhatre. The only evidence plaintiffs set forth to the contrary are several examples of DiNuzzo's signature that are not precisely the same. Pl. Br. Ex. A. To start, this contradicts their claim that DiNuzzo is a robosigner; if her signature was mechanically reproduced one would expect it to be identical. Additionally, none of those documents are admissible because they are not accompanied by any statement authenticating them or an affidavit or declaration

4

attesting to their source and provenance. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(d). Finally, and most importantly, the fact that DiNuzzo's signature may have varied at times does nothing to rebut the evidence that defendants have set forth through declarations and documentary evidence that DiNuzzo was an authorized signatory for Webster Bank and her signature in fact appears on the assignments.

Plaintiffs go on to argue that there are two different versions of the CEMA, one signed by Krista L. Gingrich on behalf of MERS and one which is blank. Pl. Br. at 30. This is of no moment because, as defendants note, it demonstrates only that Gingrich signed the document later in time and, without more, raises no suspicion that the document is in any way fraudulent. Def. Reply and Opp'n at 12. Plaintiffs also argue that Gingrich had no authority to sign on behalf of MERS, which is contradicted by defendants' submission of a MERS corporate resolution giving Gingrich authority to execute documents on their behalf. Loll Decl. Ex. 7. That submission is unchallenged by the plaintiffs and clearly demonstrates her authority. Plaintiffs argue, and defendants concede, that she was an employee of Aurora Loan Services. This is irrelevant. Nothing precludes someone from having two positions and the basic undisputed fact is that she had authority to sign on behalf of MERS. *Id.*

Plaintiffs also argue that the loan could never have been transferred to the Lehman Trust because the Trust closed on November 1, 2006 and the loan was purportedly assigned on November 28, 2006. Compl. ¶¶ 15, 20. Defendants point out that the Trust actually closed on November 30, 2006 and lists plaintiffs' loan on its schedule of assets, Def. Br. at 7–8, and plaintiffs do not further pursue their argument about the timeliness of the transfer in their opposition.

Plaintiffs further argue that the transfer of the mortgage was ineffective without the transfer of the note on which the mortgage was based. Pl. Br. at 15–16. It is correct, as plaintiffs

5

note, that while "assignment of a promissory note also effectuates assignment of the mortgage, the converse is not true: since a mortgage is merely security for a debt, it cannot exist independently of the debt." *U.S. Bank N.A. v. Dellarmo*, 94 A.D.3d 746, 748 (2d Dep't 2012).

The note, however, was properly assigned. First, the "mere possession of a promissory note endorsed in blank (just like a check) provides presumptive ownership of that note by the current holder." *Deutsche Bank Nat'l Trust Co. v. Pietranico*, 33 Misc. 3d 528, 545 (Sup. Ct. 2011); *see also Mortg. Elec. Registration Sys., Inc. v. Coakley,* 41 A.D.3d 674, 674 (2d Dept. 2007). It is undisputed that the defendants possess the note. *See* Def. SUMF ¶ 12; Loll Decl. ¶ 4 Ex. 2. In addition, the CEMA explicitly states that its purpose is to "combin[e] into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages . . . . This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and [the borrower has] one loan obligation." Compl. Ex. E at II(A). Defendants have also produced the assignment form itself, which assigns the mortgages along with "the bonds or notes or obligations described in said mortgages" to MERS as nominee for Lehman Brothers. DiNuzzo Decl. Ex. A, at 3.

Judgment is therefore proper for the defendants on both of the first two causes of action. Given the ample documentary evidence provided by defendants and the complete lack of any rebuttal, beyond conclusory factual statements not supported by any admissible evidence, plaintiffs cannot raise a triable issue of fact that there was ever any misrepresentation made to them by defendants, let alone show they are entitled to judgment.

The second cause of action is also independently barred because there is no "special relationship" between plaintiffs and defendants which would give rise to a duty to impart information. A standard lender-borrower relationship is not the kind of special relationship that supports a claim of negligent misrepresentation. *See*, *e.g.*, *Dobroshi v. Bank of Am., N.A.*, 65

A.D.3d 882, 884 (1st Dep't 2009) (noting that the Appellate Division has "repeatedly held" that arm's length lender-borrower relationship does not support a claim of negligent misrepresentation and collecting cases).

The third cause of action seeks a declaratory judgment that the challenged assignments of the mortgage were invalid and the fourth seeks to quiet title to the subject property. Functionally, these two causes of action are the same and may be analyzed together. As explained above, the evidence adduced by the defendants shows that the assignments were valid and the plaintiffs have not produced any evidence to the contrary. Thus, these causes of action also fail and summary judgment for the defendants should be granted.

The fifth cause of action is for unjust enrichment; plaintiffs claim that defendants were enriched by the receipt of mortgage payments to which they were not entitled. To prevail on a claim of unjust enrichment under New York law a plaintiff must show that the defendant was enriched at the plaintiff's expense and that "circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001). Because the mortgages and notes were validly assigned and the defendants were legally entitled to collect the payments, they were not unjustly enriched at plaintiffs' expense.

Moreover, there is no recovery for unjust enrichment where the parties have entered into a "valid and enforceable contract." *Whitman Realty Grp., Inc. v. Galano*, 41 A.D.3d 590, 593 (2d Dep't 2007). An agreement consisting of a "note and mortgage" is a contract which bars recovery for unjust enrichment. *See Lum v. New Century Mortg. Co.*, 19 A.D.3d 558, 559–60 (2d Dep't 2005). Given the valid note and mortgage agreement, the action for unjust enrichment is barred.

### III. Plaintiffs' Sixth Cause of Action.

Plaintiffs' final cause of action alleges that defendants violated the mortgage transfer disclosure requirements of the regulations promulgated pursuant to the Truth in Lending Act and its amendments, commonly known collectively as Regulation Z. 12 C.F.R. § 226.39. The provision at issue requires the disclosure of certain information to a consumer who owns a mortgaged property when the loan which the property secures is "sold, assigned, or otherwise transferred." *Id.* § 226.39(b) & (d).

The fundamental flaw in plaintiffs' cause of action for violation of mortgage transfer disclosure provisions of Regulation Z is that the relevant law was not enacted until May 2009, and its supporting regulations were not final until November 2009, three years after the alleged conduct by the defendants. *See* Helping Families Save Their Homes Act, Pub. L. No. 111-22 § 404, 123 Stat. 1632, 1658 (May 20, 2009); *see also* Truth In Lending, 74 Fed. Reg. 60143 (interim final rule implementing Pub. L. No. 111-22 § 404 by enacting 12 C.F.R. § 226.39 with an effective date of Nov. 20, 2009). Indeed, even though the regulation had an effective date of November 20, 2009, compliance with the rule was "optional until January 19, 2010." 74 Fed. Reg. at 60143. Because the transfer of the note and mortgage occurred in late 2006, more than three years before the requirement to send transfer disclosures was binding, summary judgment should be granted for the defendants on this claim.

Even if the action had a valid basis, it would be untimely. The statute of limitations for actions under the Truth In Lending Act, of which the subject disclosure requirement is a part, is one year. *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation"); *see also Cardiello v. The Money Store*, 29 Fed. App'x 780, 781 (2d Cir. March 15, 2002) (Appellants' Truth in Lending Act ("TILA") claim is

barred by the one-year statute of limitations."). The statute requires the claim be brought within one year of the "occurrence of the violation" which, in mortgages, is the date on which a plaintiff enters into a loan agreement. *See Clement v. United Homes, LLC*, No. 10-CV-2122, 2012 WL 6720701, at *5 n.3 (E.D.N.Y. Dec. 27, 2012). Here, that date is in November 2006 and therefore this action is well outside of the one-year limitations period.

## CONCLUSION

The defendants' motion for summary judgment is granted and the plaintiffs' cross-motion is denied.

**SO ORDERED.**

Brooklyn, New York
February 6, 2013

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge